Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Empresas Loyola I, S. en C., S.E.<br><br>      Peticionaria<br><br>         v.<br><br>Comisión de Ciudadanos al Rescate de Caimito; Montehiedra Community Association, Inc.; Comité de Vecinos de la Calle Bienteveo de la Urb. Montehiedra<br>         Recurridos | Certiorari<br><br>2012 TSPR 154<br><br>186 DPR ____ |

Número del Caso: CC-2009-784


Fecha: 18 de octubre de 2012


Tribunal de Apelaciones:

            Región Judicial de San Juan

Abogados de la Parte Peticionaria:

            Lcdo. Frank Torres Viada
            Lcdo. Juan Marqués Díaz
            Lcdo. Rafael Alonso Alonso
            Lcdo. José A. Sadurni Lahens


Abogados de la Parte Recurrida:

            Lcdo. Luis F. Hernández Vélez
            Lcdo. Ricardo Piovanetti Dohnert

            Sra. Haydee Colón Cardona (Por Derecho Propio)


Materia:  Ley 206-2003 Terrenos que componen el Corredor Ecológico de San Juan


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Empresas Loyola I, S. en C., S.E.

    Peticionaria

      v.

                     CC-2009-0784      Certiorari

Comisión de Ciudadanos al
Rescate de Caimito; Montehiedra
Community Association, Inc.;
Comité de Vecinos de la Calle
Bienteveo de la Urb. Montehiedra

    Recurridos


Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ


San Juan, Puerto Rico, a 18 de octubre de 2012.

El recurso de autos nos permite interpretar, por primera vez, cuáles son los terrenos que componen el Corredor Ecológico de San Juan según designados por la Ley Núm. 206-2003, y sus correspondientes enmiendas por la Ley Núm. 260-2004 y la Ley Núm. 1-2007, 12 L.P.R.A. secs. 216, *et seq.*

Al así hacerlo, debemos evaluar si el Tribunal de Apelaciones erró al revocar el desarrollo preliminar y anteproyecto de construcción aprobado por la Administración de Reglamentos y Permisos (A.R.Pe.) al interpretar que la totalidad de los terrenos privados, aledaños a las franjas protegidas por ley, les aplica una prohibición absoluta de desarrollo.

I

Los hechos que dan lugar a la controversia de autos se remontan al 14 de junio de 2007 cuando la Junta de Planificación aprobó una consulta de ubicación para el desarrollo extenso de un proyecto residencial denominado Ciudad Jardín de Cupey que fue presentada por Empresas Loyola I, S. en C. (Empresas Loyola). El proyecto consiste de la construcción de 624 apartamentos distribuidos en 14 edificios de 5 plantas y 8 edificios de 6 plantas, áreas de estacionamiento y vecinales en una finca ubicada en el Barrio Caimito de San Juan. La resolución aprobando la consulta de ubicación no fue revisada, por lo que advino final y firme. Tampoco ha sido impugnada en el recurso de epígrafe.

En lo pertinente, al evaluar el proyecto se consideró que la finca se encuentra entre dos cuerpos de agua: el Río Piedras y la Quebrada Las Curías. Además, el proyecto contó con el endoso del Municipio de San Juan y de varias agencias entre las que destacan el Departamento de Recursos Naturales (D.R.N.A.) y la Junta de Calidad Ambiental. Estas últimas requirieron que se dedicara a uso público una faja de terreno paralela al río y a la quebrada. Como consecuencia, en la consulta de ubicación se ordenó a Empresas Loyola cumplir con los requisitos indicados por el D.R.N.A. para que se dedicaran 20 metros a una franja de terreno entre los cauces de los cuerpos de agua y el proyecto.

Como parte de las subsiguientes etapas, Empresas Loyola presentó ante A.R.Pe. su solicitud de desarrollo preliminar y anteproyecto de construcción para la consulta de ubicación aprobada por la Junta de Planificación. A.R.Pe. certificó la petición mediante resolución emitida el 13 de agosto de 2008.

Concluyó que el desarrollo preliminar y anteproyecto cumple con los parámetros aprobados por la Junta de Planificación en la consulta de ubicación. Además, A.R.Pe. determinó que el desarrollo fomenta la conservación de las áreas verdes arboladas existentes a lo largo de las riveras del Río Piedras y la Quebrada Las Curías.

Con relación a la protección de los cuerpos de agua, A.R.Pe. consideró que los terrenos del proyecto colindan con el Río Piedras y con la Quebrada Las Curías, y en la porción sureste se localizan dos depresiones con flujo intermitente que nacen en el predio y son tributarias a la quebrada, los cuales se mantendrán inalterados. A su vez, examinó que el desarrollo propuesto contempla, según requerido por el D.R.N.A., mantener intacta una franja de terreno con un ancho mínimo de 20 metros a lo largo del río y de la quebrada. De esta forma, concluyó que se preserva la vegetación existente en los márgenes de esos cuerpos en su totalidad y se protegen los cauces de los ríos al implantar medidas de prevención de erosión y sedimentación.[1]

Inconformes, la Comisión de Ciudadanos al Rescate de Caimito, Montehiedra Community Association, Inc. y el Comité de Vecinos de Calle Bienteveo, Sector Guayacán, Montehiedra (los recurridos) presentaron una moción de reconsideración ante A.R.Pe. Sostuvieron que el proyecto impactaría adversamente el Corredor Ecológico de San Juan, el Río Piedras y las Quebradas Las Curías, cuyos márgenes forman parte del *Arboretum de Cupey*

---

[1] Tales medidas incluyen la provisión de trampas de sedimentos en los puntos de descarga de la escorrentía pluvial, instalación de mallas sintéticas y al final del proyecto se

(*Arboretum*). Aludieron que la resolución de A.R.Pe. es contraria a la Ley Núm. 206, *supra.* El 24 de septiembre de 2008, A.R.Pe. declaró "no ha lugar" la solicitud de reconsideración.

Ante tal situación, y en desacuerdo, los recurridos acudieron al Tribunal de Apelaciones. Señalaron como único error que A.R.Pe. autorizó el desarrollo preliminar y anteproyecto de construcción contrario a las disposiciones de la Ley Núm. 206, *supra*, que establece el Corredor Ecológico de San Juan al cual se incorporó el *Arboretum.*

El Tribunal de Apelaciones revocó a A.R.Pe. mediante la sentencia de 29 de junio de 2009. Luego de analizar la Ley Núm. 206, *supra*, el foro intermedio concluyó que el propósito de ésta es proteger los recursos naturales en armonía con un desarrollo ecológicamente sostenible que proteja la cubierta verde y las cuencas de las quebradas. Indicó que el estatuto es claro con los lindes que comprenden el *Arboretum* y el Corredor Ecológico de San Juan y con lo referente a la suspensión absoluta de la emisión de permisos que atenten contra la política pública enmarcada al aprobar la ley. El foro apelativo intermedio concluyó que los márgenes del Río Piedras y de la Quebrada Las Curías son parte del Corredor Ecológico de San Juan. Por tanto, dilucidó que la Ley Núm. 206, *supra*, aplica a la solicitud de aprobación del anteproyecto presentado por Empresas Loyola. Así, determinó que "evidentemente este tipo de proyectos fueron los que motivaron la creación de la Ley del Corredor Ecológico de San Juan para conservar precisamente los cuerpos de agua,

_____
proveerán disipadores de energía en los muros de cabecera del sistema pluvial.

flora y fauna. Se trata de un desarrollo extenso que se pretende construir en el área que el legislador protegió, tras haberse aprobado la Ley 206, que establece el Corredor Ecológico, *supra*". Véase, Sentencia del Tribunal de Apelaciones, Ap. pág. 66.

En desacuerdo con la sentencia del Tribunal de Apelaciones, Empresas Loyola comparece ante este Tribunal y señala los siguientes errores:

> Primero: Erró el Tribunal de Apelaciones al aplicar a la finca de la peticionaria la prohibición absoluta de desarrollo establecida por la Ley Núm. 206 (que crea el Corredor Ecológico de San Juan), según enmendada, por la Ley Núm. 260 (que incorpora el Arboretum de Cupey a dicho Corredor), cuando del propio texto de la ley invocada surge que dicha finca no se encuentra incluida entre aquellas para las cuales se legisló tal prohibición.
>
> Segundo: Erró el Tribunal de Apelaciones al determinar que la autorización del desarrollo preliminar y anteproyecto de construcción conferida por la A.R.Pe. a la peticionaria, bajo el número de caso 08-DA-2CET00-04605, como parte del proceso de permisología seguido para el desarrollo del proyecto Ciudad Jardín de Cupey, resulta contraria e inconsistente con los estatutos que administra dicha agencia y sus propias políticas públicas.
>
> Tercero: Erró el Tribunal de Apelaciones al ignorar el estándar deferencial que rige en materia de revisión judicial de decisiones administrativas y así sustituir de manera arbitraria el criterio experto y altamente especializado de la Junta de Planificación y la A.R.Pe. por el suyo propio. Sin mediar para ello causa o justificación alguna, de hecho o de derecho.

En reconsideración, el 5 de abril de 2010 este Tribunal expidió el recurso. Con el beneficio de la comparecencia de las partes procedemos a resolver los errores señalados.

II

A.

**Revisión judicial de decisiones administrativas**

Debemos recordar la norma firmemente establecida de que las decisiones de los foros administrativos están revestidas de una presunción de regularidad y corrección. Las conclusiones de estas agencias merecen gran deferencia por parte de los tribunales, por lo que debemos ser cuidadosos al intervenir con las determinaciones administrativas. Este principio de deferencia responde a la realidad de que los organismos administrativos poseen la experiencia y los conocimientos altamente especializados que aplican dentro del ámbito de sus facultades y responsabilidades. Unlimited v. Mun. de Guaynabo, 183 D.P.R.947 (2011); Mun. de San Juan v. CRIM, 178 D.P.R. 163, 175-176 (2010); Borschow Hosp. v. Jta. De Planificación, 177 D.P.R. 545, 566 (2009); Hatillo Cash & Carry v. A.R.Pe., 173 D.P.R. 934, 954 (2008); Rivera Concepción v. A.R.Pe., 152 D.P.R. 116, 122-124 (2000); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 672-673 (1998).

Como consecuencia a estos preceptos, hemos advertido que el criterio de razonabilidad es el que impera al revisar las determinaciones e interpretaciones de una agencia administrativa. Rebollo v. Yiyi Motors, 161 D.P.R. 69, 77-78 (2004). La función de este Tribunal al revisar las decisiones de los organismos administrativos se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o de una forma tan irrazonable que constituya un abuso de discreción. En cuanto a las determinaciones de hechos, debemos abstenernos de

intervenir con éstas si son sostenidas por evidencia sustancial que surge del expediente. Íd; Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485, 511-513 (2011); Fuertes y otros v. A.R.Pe., 134 D.P.R. 947, 953 (1993); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699-700 (1975).

Una determinación de hecho realizada por una agencia administrativa será revisable cuando quien la impugna demuestre que existe otra prueba en el expediente que reduce o menoscaba el valor probatorio a tal grado que no se puede concluir que la agencia actuó razonablemente. Véanse, Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905-907 (1999); Metropolitana, S.E. v. A.R.Pe., 138 D.P.R. 200, 212-213 (1995). De otra parte, las conclusiones de derecho de la agencia serán revisadas en todos sus aspectos aunque éstas están salvaguardadas por la norma de deferencia sustancial a las interpretaciones que en derecho haga la agencia, por lo que no podemos descartarlas livianamente. En estos casos, se debe distinguir entre los asuntos de interpretación estatutaria, en lo que los tribunales son los especialistas, y aquellas situaciones propias de la discreción o pericia administrativa. En este último aspecto, hemos expresado que cuando se trata de "política pública altamente técnica es que se determina que las agencias se encuentran mejor equipadas para hacer la decisión que interpreta la ley". D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev. Bogotá, Ed. Forum, 2001, pág. 560. Véanse, además, Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175; Pagán Santiago v.

Administración de los Sistemas de Retiro de los Empleados del Gobierno del ELA de Puerto Rico y la Judicatura, res. 10 de abril de 2012, 2012 T.S.P.R. 68, 185 D.P.R. ___ (2012); Asoc. Fcias v. Caribe Specialty, *et al.* II, 179 D.P.R. 923, 940 (2010); Martínez v. Rosado, 165 D.P.R 582, 589-590 (2005); Rebollo v. Yiyi Motors, *supra*, pág. 78; Municipio de San Juan v. J.C.A., 149 D.P.R. 263, 279-280 (1999).

Estas son las normas de revisión que imperan en nuestro ordenamiento administrativo. Debemos añadir que en Puerto Rico la normativa jurídica sobre los recursos naturales y el medio ambiente posee una dimensión de orden constitucional. El Art. VI, Sec. 19 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo I, dispone que "[s]erá política pública del Estado Libre Asociado la más eficaz conservación de los recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad. . .".

El mandato para el Gobierno es claro y está recogido en el informe de la Comisión que redactó la disposición constitucional. J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. U.P.R., 1982, Vol. III, pág. 235. El informe señala como sigue:

> Es nuestro propósito señalar con absoluta claridad la conveniencia y necesidad de que se conserven los recursos naturales en Puerto Rico. Siendo Puerto Rico una isla y teniendo pocos recursos naturales, debe haber una preocupación constante por parte del Estado en el uso, desarrollo, aprovechamiento y conservación de los mismos. La conservación de la tierra, los bosques, los peces, las aguas, las aves, las minas y las salinas, entre otros, debe ser una de las funciones primordiales de nuestro Gobierno.
> El Estado debe estudiar, y controlar hasta donde ello fuere posible, el desarrollo de sus recursos

naturales. Entendemos por "conservar", el estudio y control de los recursos para evitar la dilapidación de los mismos.

El concepto "conservar" conlleva, además, la facultad de la Asamblea Legislativa para suspender o abolir la caza o la pesca y controlar, cuando lo estime necesario y conveniente, la explotación y desarrollo de otros recursos naturales que existen actualmente o surjan en el futuro. 4 Diario de Sesiones de la Convención Constituyente 2622 (1952).

Como consecuencia, hemos expresado que cualquier decisión o determinación del Estado que incida sobre los recursos naturales debe responder cabalmente al doble mandato contenido en nuestra Constitución, de lograr la más eficaz conservación de los recursos naturales y procurar el mayor desarrollo y aprovechamiento de esos recursos para el beneficio general de la comunidad. Éste constituye el criterio jurídico primordial al juzgar la validez o interpretar el significado de cualquier norma o decisión relacionada con el uso o protección de los recursos naturales formulada por la Asamblea Legislativa o por cualquier agencia, departamento, municipio o instrumentalidad gubernamental. Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908, 918-920 (1998). Corresponde a los tribunales la función de asegurar que el Gobierno o sus agencias cumplan con la obligación de examinar cuidadosamente las implicaciones de los proyectos a desarrollarse. De esta forma, garantizamos el cumplimiento de las leyes y abonamos que en la consecución del progreso no queden maltrechos valores de igual jerarquía e importancia.

Claro está, el uso eficiente y la conservación de los recursos no constituyen ni podrán configurar un impedimento absoluto para el desarrollo sino que su uso más eficiente debe

siempre ser observado de forma balanceada. Véanse, Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 700 (2000); Misión Ind. P.R. v. J. P. y A.A.A., *supra*, págs. 675-676, 689; Paoli Méndez v. Rodríguez, 138 D.P.R. 449, 460-462 (1995).

B.

### La Junta de Planificación y A.R.Pe.

Como parte de las agencias administrativas a las que les aplica el estándar de revisión expuesto se encuentran la Junta de Planificación y A.R.Pe.[2]

La Junta de Planificación fue creada por la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R.A. sec. 62, *et seq.* Su objetivo principal fue guiar el desarrollo integral y balanceado de Puerto Rico. 23 L.P.R.A. sec. 62c. En dicha función debía velar por la adecuada utilización de nuestros terrenos y recursos naturales. Unlimited v. Mun. de Guaynabo, *supra*; Mun. de San Juan v. J.C.A., *supra*, pág. 700; Asoc. Res. Park Side, Inc. v. J.P., 147 D.P.R. 277, 284 (1998); Arenas Procesadas, Inc. v. E.L.A., 132 D.P.R. 593, 607-608 (1993).

Para viabilizar esa función, la Junta de Planificación poseía amplios poderes para clasificar y designar los terrenos

---

[2] Hacemos referencia a estas agencias debido a que al momento del trámite ante nuestra consideración constituían los organismos administrativos especializados que atendían y propiciaban el desarrollo planificado de Puerto Rico. Hoy día, tanto la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R.A. sec. 62, *et seq.* como la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71, *et seq.*, fueron sustituidas por la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, 23 L.P.R.A. sec. 9011, *et seq.*

en zonas y distritos, así como para establecer las normas que guiaban su uso y desarrollo. De igual forma, la Junta de Planificación podía dispensar el cumplimiento de uno o varios requisitos reglamentarios con el propósito de lograr la utilización óptima de los terrenos encaminando un desarrollo urbano compacto. 23 L.P.R.A. sec. 62j.

En el caso de autos, la Junta de Planificación aprobó una consulta de ubicación para un desarrollo extenso en los terrenos ante nuestra consideración. La consulta de ubicación era uno de los instrumentos que poseía la Junta de Planificación para desempeñar su poder de implantar la política de planificación y urbanismo. Borschow Hosp. v. Junta de Planificación, *supra*, pág. 557. Mediante ésta, se autorizaba el uso particular de un terreno cuyo uso propuesto no era permitido ministerialmente por la reglamentación aplicable, pero las disposiciones reglamentarias proveían para que fuera considerado. Véanse, T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 85 (1999); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 117-118 (1998); Sec. 2.00 del Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4, Reglamento Núm. 6211 de 5 de octubre de 2000.[3] Para ello, la Junta de Planificación consideraba las

---

[3] La aprobación de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, *supra*, mantuvo el mecanismo de la consulta de ubicación para la recalificación de terrenos mediante la cual se toma una determinación final de carácter discrecional que no se considera como un permiso. Este proceso se utiliza para uso propuesto de terrenos que no son permitidos, pero que las disposiciones reglamentarias proveen para su consideración por la Junta Adjudicativa de la Oficina de Gerencia de Permisos, o proyectos cuya densidad o intensidad es mayor a la que permite el distrito en que ubica, o se propone un desarrollo en un solar con una cabida distinta a la permitida, entre otras situaciones. 23 L.P.R.A. sec. 9011(14).

disposiciones de su ley orgánica, la Ley de Municipios Autónomos, el Plan de Desarrollo Integral, Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico, los Planes de Usos de Terrenos, Mapas de Zonificación, Mapas de Zonas susceptibles a Inundación, el Plan de Ordenación Territorial adoptado, y el Reglamento de Zonificación, entre otros. Véanse, T-JAC, Inc. v. Caguas Centrum Limited, *supra*, págs. 85-86; Misión Ind. P.R. v. J.P., *supra*, págs. 119-120. Así, pues, una vez aprobada la consulta de ubicación, se consideraba vigente durante el periodo dispuesto por la Junta de Planificación para continuar con las etapas subsiguientes o durante la vigencia de cualquier etapa subsiguiente a la consulta de ubicación como consecuencia de la aprobación. Además, la consulta de ubicación constituía un elemento esencial en la toma de decisiones de otras agencias debido a que establecía los parámetros que A.R.Pe. debía seguir y considerar en las subsiguientes fases. Véanse, Hatillo Cash & Carry v. A.R.Pe., *supra*, pág. 950; Sección 10.00 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 6031 de 13 de octubre de 1999.

De otra parte, la Asamblea Legislativa relevó a la Junta de Planificación de sus responsabilidades fiscalizadoras operacionales para que ésta dedicara sus esfuerzos y recursos a la implantación de la política pública y estrategias concernientes al desarrollo físico, económico y social del país. Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 D.P.R. 521, 550 (2002); Asoc., C.D. Octubre v. J.A.C.L., 116 D.P.R. 326, 331 (1985); Junta de Planificación v. J.A.C.L., 109 D.P.R. 210, 214 (1979); The Richards Group v. Junta de Planificación, 108 D.P.R.

23, 31-32 (1978). Con ese fin la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71, *et seq.*, creó a la A.R.Pe. como una agencia central adscrita a la Junta de Planificación cuyo propósito consistió en velar por el cumplimiento de las leyes y reglamentos, y llevar a cabo los asuntos correspondientes. 23 L.P.R.A. secs. 71a, 71d(p); Hatillo Cash & Carry v. A.R.Pe., *supra*, 946.

En esencia la fase operacional de planificación es posterior a la aprobación del proyecto por la Junta de Planificación. La fase operacional se inicia con la presentación de una solicitud de desarrollo y conlleva revisar la viabilidad del proyecto en su fase de implantación. Es una etapa de índole especial técnica que persigue corroborar los detalles particulares del proyecto para que se adhieran a lo dispuesto en la resolución aprobada por la Junta de Planificación. Unlimited v. Mun. de Guaynabo, *supra*. Una de las etapas subsiguientes a la consulta de ubicación era la del anteproyecto y desarrollo preliminar. El anteproyecto consistía en un proceso por el cual se representaban las etapas de desarrollo de un proyecto en la forma preliminar de un plano de construcción de obras y/o estructuras preparado por un profesional autorizado. Con ello se obtenía un permiso preliminar que aceleraba el trámite de expedición para los permisos de construcción si cumplía con las leyes y reglamentos aplicables. Mun. de San Juan v. J.C.A., *supra*, pág. 712. Tanto el anteproyecto como el desarrollo preliminar, eran mecanismos que se usaban para concretar los detalles del desarrollo, y correspondían a A.R.Pe.

examinarlas como parte de la fase operacional relacionada con la consulta de ubicación previamente aprobada.[4] Véanse, Art. 3 de la Ley de la Junta de Planificación, 23 L.P.R.A. sec. 62b(f); Art. 3 de la Ley de A.R.Pe., 23 L.P.R.A. sec. 71b(l)(2008).

En lo que nos atañe, estamos ante un proceso relacionado a la fase operacional de una consulta de ubicación final y firme que fue debidamente aprobada por la Junta de Planificación. Los errores señalados por Empresas Loyola se limitan a la etapa de anteproyecto y desarrollo preliminar ante A.R.Pe., cuya aprobación fue revocada por el Tribunal de Apelaciones.

C.

### Las leyes que crean el Corredor Ecológico de San Juan e incorporan el *Arboretum*

Para dilucidar si el error fue cometido resulta necesario examinar la Ley Núm. 206, *supra*, en la que el foro intermedio fundamenta su curso decisorio. Procedemos a ello.

### La Ley Núm. 206-2003

Como parte de los esfuerzos del Estado en promulgar legislación para reiterar su compromiso con la más eficaz conservación de sus recursos se promulgó el P. del S. 403. Éste se convirtió en la Ley Núm. 206-2003, 12 L.P.R.A. sec. 216, *et seq.*, la cual creó el Corredor Ecológico de San Juan.

El proyecto legislativo respondió a la necesidad de lidiar con el desarrollo urbano **desenfrenado** en la ciudad capitalina y evitar la contaminación del medio ambiente. Para ello, se

---

[4]En algunos casos la referida etapa se realizaba ante el Municipio Autónomo. En el caso ante nuestra consideración, la propia Junta de Planificación estableció que la fase operacional sería atendida por A.R.Pe.

designó un área verde de aproximadamente mil cuerdas con bosques que constituyen zonas naturales de amortiguamiento para el desarrollo urbano y que representan una fuente de refugio, alimento para la vida silvestre, y estabilizan la erosión y los niveles de agua de ríos y quebradas. Informe Conjunto de la Comisión Especial de Desarrollo de la Ciudad de la Capital, la Comisión de Agricultura, Recursos Naturales y Energía y la Comisión de Hacienda del Senado de Puerto Rico sobre el P. del S. 403 de 30 de mayo de 2002, 14ta Asamblea Legislativa, 3ra Sesión Ordinaria, pág. 14.

Los terrenos identificados componen una compleja madeja de ecosistemas, cada una con su balance interno, e interconectados entre sí y con otros sistemas, en beneficio de toda la zona de San Juan. Además, la protección de estas áreas resulta afín con el plan para la protección de las cuencas hidrográficas[5], específicamente la de Río Piedras, como parte de un compromiso programático del Gobierno. 2003 (Parte 1) Leyes de Puerto Rico 1016, págs. 1023-1024.

Estos terrenos serían manejados para cumplir con la política pública a implantarse para la conservación, manejo y protección de los recursos naturales en la zona metropolitana de San Juan. Así, se estableció una calificación y clasificación de los suelos cónsona con el Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III.[6] La elección

---

[5]La cuenca hidrográfica constituye el área de captación por donde discurren las aguas de escorrentías hacia un cuerpo de agua superficial. 12 L.P.R.A. sec. 216a(e).

[6]El Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III designó aproximadamente un veintiún porciento

de los terrenos no constituyó una enajenación total de éstos, sino más bien una limitación de su uso para recreación, educación y utilización por el público general. Véase, Informe Conjunto de las Comisiones de Recursos Naturales y Calidad Ambiental, y de Desarrollo del Municipio de San Juan de la Cámara de Representantes de Puerto Rico sobre el P. del S. 403 de 18 de noviembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 20.

El objetivo principal del proyecto consistió en proteger las áreas verdes designadas para que formaran el Corredor Ecológico de San Juan. Con ello se prohibió el otorgamiento de permisos de construcción en esa zona que fueran contra la política pública esgrimida y se ordenó al D.R.N.A. que adquiriera los terrenos que comprenden las fincas identificadas debidamente con su número de catastro, para lo cual se asignaron unos fondos. Informe Conjunto de las Comisiones de Recursos Naturales y Calidad Ambiental, y de Desarrollo del Municipio de San Juan de la Cámara de Representantes de Puerto Rico sobre el P. del S. 403 de 18 de noviembre de 2002, *supra*, pág. 1; Informe Conjunto de la Comisión Especial de Desarrollo de la Ciudad de

_____

del suelo del Municipio de San Juan como Suelo Rústico y Suelo Rústico Especialmente Protegido. Véase, Ponencia del 19 de octubre de 2001 del Arq. Roberto Alsina, Director del Departamento de Urbanismo del Municipio de San Juan presentada con relación al P. del S. 403. El Suelo Rústico Especialmente Protegido es el no contemplado para uso urbano o urbanizable en un Plan Territorial, y que por su especial ubicación, topografía, valor estético, arqueológico o ecológico, recursos naturales únicos, u otros atributos, se identifica como un terreno que nunca deberá utilizarse como suelo urbano. Véase, Apéndice 1 del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III vigente desde el 13 de marzo de 2003.

la Capital, la Comisión de Agricultura, Recursos Naturales y Energía y la Comisión de Hacienda del Senado de Puerto Rico sobre el P. del S. 403 de 30 de mayo de 2002, *supra*, págs. 11-13; además, refiérase al Plan para establecer prioridad de adquisición en el Corredor Ecológico de San Juan del D.R.N.A., Negociado de Servicio Forestal, División de Investigación Forestal, mayo 2008.

El P. del S. 403 fue objeto de varias vistas públicas y de una vista ocular. El proyecto contó con la participación de numerosos grupos en representación de distintos sectores. Predominó el consenso mayoritario de avalar la propuesta para conservar las áreas verdes que componen los terrenos identificados por entender que responde a la necesidad de velar y proteger el ecosistema y las pocas áreas verdes dentro del Municipio de San Juan. Otros presentaron sus preocupaciones con relación a los problemas que conlleva adquirir los terrenos y la falta de profundidad sobre estudios ambientales, sociales y económicos al fisco.

En cuanto a los cuerpos de agua ubicados en esas áreas, el Dr. Ariel E. Lugo, Director del Servicio Forestal del Departamento de Agricultura de los Estados Unidos de América, recomendó que "los ríos y quebradas sean incorporados al Corredor Ecológico ya que de por sí son corredores ecológicos naturales y esenciales para el ciclo de agua de la ciudad y el funcionamiento ecológico de las áreas verdes". A su vez, el doctor Lugo expresó su oposición a la canalización de los ríos y quebradas. De igual forma, el Sr. Alexis Molinaris Forestier, Director Ejecutivo de la Fundación Enrique Martí Coll, ecólogo

de profesión y consultor de proyectos e iniciativas ambientales para entidades gubernamentales, organizaciones sin fines de lucro y empresas socialmente responsables, exhortó a "proteger los ríos y quebradas como corredores naturales y descontinuar la canalización como solución a los problemas de inundación". Informe Conjunto de la Comisión Especial de Desarrollo de la Ciudad de la Capital, la Comisión de Agricultura, Recursos Naturales y Energía y la Comisión de Hacienda del Senado de Puerto Rico sobre el P. del S. 403, *supra*, págs. 39-40.

Posteriormente, el P. del S. 403 se convirtió en la Ley Núm. 206-2003, *supra*. A estos efectos, el Art. 1 de la Ley Núm. 206, dispuso como sigue:

> Con el fin de implantar la política pública de conservación y manejo y protección de los recursos naturales en la zona metropolitana de San Juan, la Asamblea Legislativa de Puerto Rico **reconoce que los bosques son un recurso natural y único**, por su capacidad para conservar y restaurar el balance ecológico del medio-ambiente y, por tanto, **designa las fincas mencionadas en el Art. 7 de esta Ley** [216f de este título], como Corredor Ecológico de San Juan, área que incluye las siguientes: Bosque Estatal del Nuevo Milenio; Bosque Urbano Doña Inés María Mendoza Rivera de Muñoz Marín; y las fincas adjuntas que conforman el área conocida como el "Parque del Este", según descrito en el Plan Especial Territorial 4.2, del Plan de Ordenación Territorial del Municipio de San Juan; el conector de área verde que une elementos lineales de ríos, quebradas y estas áreas verdes entre sí y el Estuario de la Bahía de San Juan; el Complejo Universitario de la Universidad de Puerto Rico, conocido comúnmente como el Jardín Botánico Norte y el Jardín Botánico Sur, en Río Piedras, que comprende las propiedades administradas por la Administración Central de la Universidad de Puerto Rico, y la Oficina del Presidente de la Universidad de Puerto Rico, la Estación Experimenta[l] Agrícola (RUM), el Servicio de Extensión Agrícola (RUM), los terrenos anteriormente administrados por la Administración de los Colegios Regionales de la

UPR, el nuevo Centro de Cuidado Diurno, la Residencia Oficial del Presidente de la UPR, el Jardín Botánico Norte, el Jardín Botánico Sur, los terrenos de la Universidad de Puerto Rico arrendados al Servicio Forestal Federal (Instituto Internacional de Dasonomía Tropical); y los terrenos de la Universidad de Puerto Rico arrendados al Fideicomiso de Conservación de Puerto Rico, y la propiedad de la Autoridad de Acueductos y Alcantarillados (AAA) que comprenden los terrenos que anteriormente pertenecían a la Central San José. Estos terrenos del Complejo Universitario pasarán a conformar parte del Corredor Ecológico de San Juan, pero la Universidad de Puerto Rico continuará con la titularidad de los mismos. Énfasis suplido. 12 L.P.R.A. sec. 216 (2007).

Como consecuencia, los lindes del Corredor Ecológico de San Juan fueron identificados catastralmente en el Art. 7 de la Ley Núm. 206, 12 L.P.R.A. sec. 216f. Sobre estos terrenos se incorporó una prohibición a la Junta de Planificación, a A.R.Pe. y a cualquier otra instrumentalidad a emitir permisos que no fueran cónsonos con la política pública de conservación y con la calificación y clasificación establecida por el Plan de Ordenamiento Territorial del Municipio de San Juan. Véase, Art. 3 de la Ley Núm. 206, 12 L.P.R.A. sec. 216b. Igualmente, las fincas identificadas no pueden transferirse o enajenarse para otros fines. Art. 5 de la Ley Núm. 206, 12 L.P.R.A. sec. 216d. A pesar de la preocupación esgrimida para que se incorporaran los ríos y quebradas al Corredor Ecológico de San Juan, el legislador se limitó a incluir exclusivamente las fincas identificadas mediante el número de catastro. Tampoco se impidió el desarrollo ordenado de áreas aledañas al Corredor Ecológico de San Juan.

**La Ley Núm. 260-2004**

La Ley Núm. 206, *supra*, fue enmendada el 8 de septiembre de 2004 cuando se aprobó el P. del S. 2414, el cual se convirtió en la Ley Núm. 260. Con esta enmienda se incluyó al *Arboretum* como parte del Corredor Ecológico de San Juan. Éste consiste de un proyecto que respondió a la iniciativa ciudadana de las comunidades de Cupey y Caimito que promueve la siembra de los árboles en espacios verdes.[7] 2004 (Parte 2) Leyes de Puerto Rico, 1980, pág. 1982; además, véase, L.E. Rodríguez Rivera, Hacia un desarrollo sostenible: análisis de legislación ambiental aprobada durante los años naturales 2003 y 2004, 74 Rev. Jur. U.P.R. 909 (2005).

Durante el proceso de aprobación de la Ley Núm. 260, *supra*, el D.R.N.A. en su ponencia del 17 de febrero de 2004 destacó que el P. del S. 2414 consideró ampliar el Corredor Ecológico de San Juan para proteger **las franjas verdes sembradas por la comunidad**. El D.R.N.A. recomendó que no se cambiaran los límites del Corredor Ecológico de San Juan para incluir **esas franjas**. Por su parte, la Comisión Especial de Desarrollo de la Ciudad Capital y de Agricultura, Recursos Naturales y Energía, recomendó el P. del S. 2414 por entender que este contempla la creación de un museo vivo de árboles. Véase, Informe Positivo Final sobre P. del S. 2414 del Senado de Puerto Rico, 28 de abril de 2004, 14ta Asamblea Ordinaria, 7ma Sesión Ordinaria, págs. 10-11.

---

[7]Al momento de la aprobación de la Ley Núm. 260-2004 más de dos mil árboles habían sido plantados.

Conforme a lo señalado, al aprobarse la Ley Núm. 260, *supra,* el legislador expresó que el objetivo de ésta era "detener la destrucción de éstas áreas boscosas y proteger adecuadamente el único río existente y al único lago que tenemos en el Municipio de San Juan, como lo son el Río Piedras y el Lago Las Curías, al igual que quebradas tributarias…", por lo que dispuso "la inclusión del Arboretum de Cupey dentro del Corredor Ecológico de San Juan para que se declare por ley la conservación de estas tierras y cuerpos de agua". 2004 (Parte 2) Leyes de Puerto Rico, *supra*, págs. 1982-1983. Así, al proteger las áreas verdes se evitaba el daño a las riberas aledañas.

Al aprobar la Ley Núm. 260, *supra*, el Corredor Ecológico de San Juan quedó configurado por el listado de fincas identificadas catastralmente y, además, se enmendó el Art. 1 y el Art. 7 de la Ley Núm. 206, *supra*, para incluir el área sembrada de árboles denominada como el *Arboretum*. Para ello, se añadió al Art. 1 de la Ley Núm. 206, *supra*, los párrafos siguientes:

> **Se incluye en el Corredor Ecológico de San Juan, el área que comprende el Arboretum de Cupey,** el cual, tomando como punto de partida el límite SUR OESTE del Jardín Botánico SUR y comenzando en las áreas verdes de la Avenida Ana G. Méndez (PR-176), transcurre hacia el SUR desde el puente sobre el Río Piedras entre el kilómetro 0.9 y el kilómetro 1.0 hacia las áreas verdes de los terrenos de la Avenida Víctor M. Labiosa, más adelante que comienza en el kilómetro 1.6 incluyéndose las áreas verdes en ambos lados y los remanentes de tierras pertenecientes al Estado Libre Asociado de Puerto Rico **e incluyendo las áreas verdes de los terrenos que comprenden los márgenes de la Quebrada Ausubo** a lo largo de la Avenida Víctor M. Labiosa hasta la intersección con la Avenida Las Cumbres (P.R. 199) al SUR.
>
> **Se incluyen los márgenes del Río Piedras** desde que éste penetra en el Jardín Botánico Sur y en la colindancia con éste cerca del kilómetro 0.9-1.0

de la Avenida Ana G. Méndez, transcurriendo aguas arriba hacia el SUR, cruzando los puentes de las Avenidas Lomas Verdes (P.R. 177) y Las Cumbres (P.R. 199) hasta su nacimiento en la intersección de las Quebradas Las Curías y Los Guanos.

**Además, se incluyen los márgenes de la Quebrada las Curías y la Quebrada Los Guanos.** (Énfasis suplido.) 12 L.P.R.A. sec. 216 (2007).

Las enmiendas para incluir los lindes al Art. 7 de la Ley Núm. 206, *supra*, incluyeron la descripción del *Arboretum,* pero no se añadieron fincas por la designación catastral, como se hizo originalmente. La razón para ello consistió en que al incluir el *Arboretum* solo se pretendía incluir las **franjas de terreno que incluían las áreas sembradas y los márgenes de los ríos y quebradas en esos suelos**. En ningún momento se pretendió incluir la totalidad de los terrenos adyacentes a éstas.

**La Ley Núm.1-2007**

Lo anterior ocasionó una tercera enmienda a la Ley Núm. 206, *supra.* Para ello se presentó el P. de la C. 2701 con el fin de aclarar el lenguaje respecto a las áreas verdes aledañas a las vías públicas que componen el Corredor Ecológico de San Juan. Existía incertidumbre con relación a si los terrenos que componían el *Arboretum* contenidos como parte del Corredor Ecológico de San Juan incluían los terrenos públicos —como los márgenes de los ríos—, o si comprendían, además, terrenos privados. Véase, Ponencia de la Junta de Planificación del 17 de febrero de 2004 en el P. de la C. 2701. Se cuestionaba si al incluir el *Arboretum* se incluyó "las áreas verdes en terrenos públicos y en la servidumbre vial o si es cualquier área verde, incluyendo una finca privada que sucede que colinde en parte con la vía pública, que forme parte del 'Arboretum'". Informe de la

Comisión de Desarrollo del Municipio de San Juan de la Cámara de Representantes sobre el P. de la C. 2701, 16 de octubre de 2006, 15ta Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 3.

Mediante el P. de la C. 2701 se reiteró la política pública de "conservación y buen manejo de nuestros recursos naturales y ambientales, **en un necesario balance con la necesidad de nueva infraestructura y desarrollo ordenado**". Véase, Informe de la Comisión de Comercio, Turismo, Urbanismo e Infraestructura del Senado de Puerto Rico sobre el P. de la C. 2701, 9 de noviembre de 2006, 15ta Asamblea Legislativa, 4ta Sesión Ordinaria. A su vez, se entendió necesario especificar que forman parte del Corredor Ecológico de San Juan aquellas áreas verdes de la servidumbre legal a favor del Estado y reglamentario de las vías públicas. Véase, Informe de la Comisión de Desarrollo del Municipio de San Juan de la Cámara de Representantes sobre el P. de la C. 2701, *supra*, págs. 3-4.

El P. de la C. 2701 se convirtió el 24 de enero de 2007 en la Ley Núm. 1-2007. Mediante ésta, la Asamblea Legislativa aclaró cuáles terrenos, fincas y espacios públicos se incluyeron dentro del área del Corredor Ecológico de San Juan al aprobarse la Ley Núm. 260, *supra*. De esta forma, se minimizaron las diferencias de interpretación por las agencias del gobierno y se cumplió con el sentido y espíritu que promulgó la designación del Corredor Ecológico de San Juan. Véase, Exposición de Motivos de la Ley Núm. 1-2007.

De la exposición de motivos de la Ley Núm. 1, *supra*, surge indiscutiblemente que la intención legislativa al incluir el *Arboretum* al Corredor Ecológico de San Juan fue designar un área

verde protegida a lo largo de éste para asegurar la protección de "tierras **públicas** de sufrir impactos adicionales adversos". Para ello, se añadió el *Arboretum* al Corredor Ecológico de San Juan para incluir un "área **a las orillas** de varias vías públicas y **cuerpos de agua** en que la comunidad ha desarrollado un proyecto de reforestación urbana". Estas áreas al margen de las carreteras y cuerpos de agua hasta cierta distancia constituyen servidumbre de uso público, por lo que la Asamblea Legislativa está facultada para restringir las actividades en esos espacios.

Ante tal aclaración, el Art. 1 y el Art. 7 de la Ley Núm. 206, *supra*, sufrieron una nueva enmienda. El segundo párrafo del Art. 1 de la Ley Núm. 206 según enmendada por la Ley Núm. 260 fue reformado por la Ley Núm. 1, *supra*, para que lea como sigue:

> Se incluye en el Corredor Ecológico de San Juan, el área que comprende el llamado "Arboretum de Cupey", el cual, tomando como punto de partida el límite SUR OESTE del Jardín Botánico SUR y comenzando en las áreas verdes de la Avenida Ana G. Méndez (PR-176), transcurre hacia el SUR desde el puente sobre el Río Piedras entre el kilómetro 0.9 y el kilómetro 1.0 hacia las áreas verdes de los terrenos de la Avenida Víctor M. Labiosa, más adelante que comienza en el kilómetro 1.6 **incluyéndose las áreas verdes de la servidumbre legal y reglamentaria de dichas vías públicas** así como los remanentes de tierras pertenecientes al Estado Libre Asociado de Puerto Rico e incluyendo las áreas verdes de los terrenos que comprenden los márgenes de la Quebrada Ausubo a lo largo de la Avenida Víctor M. Labiosa hasta la intersección con la Avenida Las Cumbres (PR-199) al SUR. (Énfasis suplido.) 12 L.P.R.A. sec. 216 (Suplemento 2011).

En cuanto a la porción que constituye la servidumbre legal a los márgenes de los cuerpos de agua, ésta se encuentra delimitada por varias disposiciones aplicables. En lo pertinente a los hechos particulares, debemos destacar la Ley

Núm. 49-2003 según enmendada por la Ley Núm. 55-2004; 12 L.P.R.A. sec. 255 nt,[8] el Reglamento de Lotificación y Urbanización (Reglamento de Planificación Núm. 3), el Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III, y el Plan Especial Temático Núm. 8.

El Art. 2 de la Ley Núm. 49, *supra*, dispone para que cualquier proyecto de urbanización, permiso de construcción o de uso o cualquier lotificación en terrenos colindantes con o por el cual discurre un río, quebrada, laguna o cualquier cuerpo de agua se dedique a uso público. Para ello, se requiere inscribir en el Registro de la Propiedad -a nombre del D.R.N.A. o del Municipio con jurisdicción- una faja de terreno con un ancho mínimo de cinco metros lineales a ambos lados del cauce natural del río, arroyo o quebrada. De igual forma, dispone el Reglamento de Planificación Núm. 3 en su Sección 14.00. Por su parte, en el Municipio de San Juan la Sección 5.03 (g) del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III, requiere que se dedique a uso público a nombre del D.R.N.A. una faja de terreno con un mínimo de diez metros lineales a ambos lados de los cauces de los cuerpos de agua. Es decir, el Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III -como norma general- obliga a conservar un área mayor en los márgenes de los cauces de los cuerpos de agua.

Ahora bien, el Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III, establece unos distritos de ordenación especial, entre éstos, los llamados Distritos de

_____

[8] Ley para establecer la política pública sobre la prevención de inundaciones y conservación de ríos y quebradas.

Ordenación Especial PET (Plan Especial Temático). Éstos van dirigidos a precisar el ordenamiento de grandes extensiones de terreno en el territorio municipal e introducir modificaciones o enmiendas a la zonificación vigente. Como parte de los objetivos de los planes especiales temáticos se encuentra la conservación de reservas de terreno especialmente protegidas. Así, se adoptó el Plan Especial Temático Núm. 8.[9] Véase, Sección 12.08 del Reglamento de Ordenación Territorial del Municipio de San Juan, III. Éste establece una zona de conservación para los terrenos del Municipio de San Juan con relación al cauce del Río Piedras y corredores ribereños. Como consecuencia, se constituyó una franja de conservación para las corrientes del Río Piedras, Quebrada Las Curías y Quebrada Juan Méndez de veinte metros a cada lado de los márgenes de estos cuerpos de agua. El objetivo de las franjas de conservación para la red fluvial es la reconexión de los corredores de vegetación, evitar la reducción adicional de los corredores existentes y mantener los cauces naturales de los ríos y quebradas.

III

Con el marco doctrinal expuesto nos corresponde disponer el recurso ante nuestra consideración. Las cuestiones planteadas en el recurso presentado por Empresas Loyola fueron

---

[9] Denominado así por la Oficina de Planificación y Ordenación Territorial del Municipio de San Juan y también conocido como Plan Especial Temático 4.5 que delimita y reglamenta lo concerniente al cauce del Río Piedras y los corredores ribereños dentro del territorio municipal. El Plan Especial Temático Núm. 8 incorporó las recomendaciones del Informe Final de Guías de Reforestación para las Cuencas Hidrográficas de Puerto Rico sometido al D.R.N.A. el 3 de abril de 1998.

discutidas de forma conjunta e integrada, por estar estrechamente relacionados entre sí. Éstas van dirigidas a controvertir la sentencia emitida por el Tribunal de Apelaciones en la que se revocó el desarrollo preliminar y anteproyecto aprobado por A.R.Pe., al concluir que no procede el desarrollo por entender que contraviene la prohibición absoluta contenida en la Ley Núm. 206, *supra*.

En esencia, Empresas Loyola cuestionó que el foro apelativo intermedio revocó a A.R.Pe. Expuso que el Tribunal de Apelaciones erró al extender la aplicación de la Ley Núm. 206, *supra*, a su proyecto. Sostuvo que la propiedad a ser desarrollada no forma parte del Corredor Ecológico de San Juan. Igualmente, señaló que la finca no está identificada por su número de catastro como una de las que integra el Corredor Ecológico de San Juan. Expuso que la determinación del foro apelativo intermedio constituye una incautación no contemplada por la Ley Núm. 206, *supra*, según enmendada. Adujo que las enmiendas realizadas a la Ley Núm. 206, *supra*, tuvieron el propósito de incorporar el *Arboretum* al Corredor Ecológico de San Juan e hicieron referencias a las franjas o servidumbres de conservación a lo largo de los márgenes del Río Piedras y la Quebrada Las Curías. Además, señaló que ello no significa que se incorporara la totalidad de la finca colindante a esas áreas, sino que la porción que constituía la servidumbre de conservación sería protegida. Así, arguyó que se logró el objetivo dispuesto en la Ley Núm. 206, *supra*, según enmendada, al mantener un ancho de 20 metros a cada largo de los márgenes de los cuerpos de agua según requerido por el D.R.N.A., la Junta

de Planificación y A.R.Pe. Asimismo, señaló que ello cumple con la política pública y con el Plan Especial Temático Núm. 8. El Municipio de San Juan está acorde con lo expresado por Empresas Loyola y añade que el proyecto es ambientalmente viable.

Por su parte, los recurridos entienden que no procedía otorgar el permiso de construcción. Argumentan que a la finca a desarrollarse le aplica la Ley Núm. 206, *supra.* Los recurridos interpretan que el listado de números de catastro incorporados en la Ley Núm. 206, *supra*, son solamente una porción de la zona protegida. Para ello, sostienen que el estatuto requiere la conservación de la totalidad de la zona. A su vez, arguyen que la enmienda incorporada por la Ley Núm. 260, *supra*, incluyó los márgenes de la Quebrada Las Curías y el Río Piedras como parte del *Arboretum* y, a su vez, del Corredor Ecológico de San Juan, por lo que abarca el proyecto de Empresas Loyola.[10] Aluden a la intención legislativa de la Ley Núm. 206, *supra*, para proteger el medio ambiente. Los recurridos concluyen que como la finca a desarrollarse ubica en el área de la zona del Corredor Ecológico de San Juan, por encontrarse entre la Quebrada Las Curías y el Río Piedras, es objeto de la protección ambiental incorporada por la Ley Núm. 206, según enmendada. Señalan que el propósito de la Ley Núm. 206, *supra*, es prohibir los desarrollos de los terrenos ubicados en esta área, por lo que sostienen que no procede expedir permisos de construcción alguno en esta zona. Los recurridos argumentaron que requerir mantener una franja de 20 metros a lo largo de los márgenes de esos cuerpos

---

[10]Véase, Alegato de la Parte Recurrida, pág. 7.

de agua es insuficiente para cumplir con la Ley Núm. 206, *supra*. Señalan que condicionar la emisión del permiso a la restricción territorial no fue la intención al crear el Corredor Ecológico de San Juan.

La exposición sobre el trasfondo de la creación del Corredor Ecológico de San Juan y la incorporación del *Arboretum* reflejan irrefutablemente que el área protegida solo incluye mil cuerdas de terrenos –en la mayoría públicas– que fueron debidamente identificadas por su número de catastro del Centro de Recaudaciones de Ingresos Municipales. Además, mediante la Ley Núm. 260, *supra*, se incorporó el *Arboretum* al Corredor Ecológico de San Juan que incluyó un área verde y la protección de los márgenes de los ríos y quebradas detallados. Para ello el lenguaje utilizado identificó que "se incluye en el Corredor Ecológico de San Juan, el área que comprende el Arboretum de Cupey" e incorporó "las **áreas verdes** de los terrenos que comprenden los **márgenes** de la Quebrada Ausubo", además, los "**márgenes** del Río Piedras" y "los **márgenes** de la Quebrada Las Curías y la Quebrada Los Guanos". 12 L.P.R.A. sec. 216 (2007). La prohibición para el desarrollo de esas áreas fue una absoluta. Por ello, el estatuto confirió al D.R.N.A. la encomienda de adquirir los terrenos privados debidamente identificados e incorporados en el Corredor Ecológico de San Juan. 12 L.P.R.A. sec. 216e, 216g.

Posteriormente, la Ley Núm. 1, *supra*, disipó cualquier duda sobre si la prohibición incluía la totalidad de los terrenos aledaños. El historial claramente refleja que la prohibición de desarrollo no se extendió a las fincas continuas y mucho menos

a la totalidad de las fincas privadas que circundan el Corredor Ecológico ni el *Arboretum.* Ésta solamente se extendió a los terrenos y servidumbres legales del Estado. A estos efectos se expresó que "la designación de un área verde protegida a lo largo del Corredor Ecológico de San Juan es la de asegurar la protección de las **tierras públicas** de sufrir impactos adversos" y que "las áreas **al margen** de la carretera y cuerpos de agua hasta cierta distancia **son, bajo nuestro ordenamiento legal servidumbres de uso público**". Véase, Exposición de Motivos de la Ley Núm. 1-2007.

El estudio del historial expuesto al aprobar el Corredor Ecológico de San Juan y sus enmiendas reflejan que la intención legislativa consistió en promover la conservación y manejo de sus recursos naturales en armonía con un desarrollo juicioso de los terrenos en las zonas urbanas. En ningún momento se pretendió detener en forma absoluta el desarrollo de las áreas aledañas a los terrenos a conservarse. La Asamblea Legislativa promulgó concientizar sobre la necesidad de un desarrollo económico sustentable para lograr una mejor utilización de los terrenos considerando el impacto ecológico que ello conlleva. Véase, Informe de la Comisión de Comercio, Turismo, Urbanismo e Infraestructura del Senado de Puerto Rico sobre el P. de la C. 2701, *supra.*

El hecho de que la creación y conservación de las áreas identificadas responda a la preocupación de que la continuación de aprobación de desarrollos desmedidos en el área puede impactar adversamente la cubierta verde y las cuencas de las quebradas, no implica una prohibición absoluta para el

desarrollo de todos los proyectos en las fincas aledañas. Máxime cuando hemos desatacado que las áreas protegidas fueron debidamente identificadas. La Ley Núm. 206, según enmendada, así lo refleja. Nótese que el Art. 1 del estatuto designa patentemente el área protegida como "las fincas mencionadas en la sec. 216f de este título".[11] Mientras que el Art. 7 de la Ley Núm. 206, *supra*, detalla en una lista las fincas que componen el Corredor Ecológico de San Juan según su número de catastro y la descripción general sobre el *Arboretum* y las vías públicas así como los remanentes de los terrenos pertenecientes al Gobierno y los márgenes del Río Piedras, la Quebradas Las Curías y Los Guanos.[12] Por ello, el estatuto vedó la aprobación de permisos que no son cónsonos con la política pública establecida en el área para la conservación de los terrenos de acuerdo con la calificación y clasificación del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III.[13] Dicha prohibición no impide la totalidad de los desarrollos en las zonas colindantes.

La función de este Tribunal consiste en examinar cuidadosamente las implicaciones de los proyectos a desarrollarse desde la perspectiva jurídica. Este ámbito se ciñe a estudiar si se observaron las disposiciones legales y reglamentarias que impone el desarrollo integrado del país. En ese ejercicio estamos limitados a examinar el cumplimiento con

---

[11] 12 L.P.R.A. sec. 216.

[12] 12 L.P.R.A. sec. 216f.

[13] 12 L.P.R.A. sec. 216b.

las leyes para garantizar un balance necesario entre la protección de los recursos y el progreso. De esta forma garantizamos el uso eficiente de los recursos limitados y el mejor desarrollo de nuestros terrenos conforme al mandato constitucional. Nuestras actuaciones no deben responder a nuestro juicio sobre la sabiduría de permitir la construcción de determinado proyecto.[14]

En cuanto al recurso ante nuestra consideración, no existe controversia de que la finca de Empresas Loyola **no** fue una de las identificadas como parte del Corredor Ecológico de San Juan por su número de catastro al aprobar la Ley Núm. 206, *supra*, ni sus enmiendas. La propiedad es aledaña al *Arboretum* y está localizada entre el Río Piedras, la Quebrada Las Curías y contiene dos depresiones tributarias de ésta. Como vimos, ello no conlleva que la finca forme parte del Corredor Ecológico de San Juan. Recalcamos que la finca claramente no fue incluida dentro del listado taxativo identificado por la Ley Núm. 206, *supra*. Por tanto, el Tribunal de Apelaciones erró al determinar que procede una prohibición absoluta al desarrollo propuesto por Empresas Loyola debido a que se pretende construir en el área que, según interpretó, el legislador protegió en la Ley Núm. 206, *supra*. Sin embargo, ello no implica que el desarrollo ignore la política pública encaminada a proteger los recursos naturales de esa área y sea cónsono con el Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III.

---

[14]Véase, Opinión concurrente y disidente del Juez Asociado señor Negrón García, Misión Ind. P.R., v. J.P. y A.A.A., 142 D.P.R. 656 (1997).

Un estudio acucioso del expediente refleja que al aprobar el anteproyecto y desarrollo preliminar A.R.Pe. consideró que el proyecto fomenta la conservación de las áreas verdes arboladas existentes a lo largo del Río Piedras y la Quebrada Las Curías. A su vez, esa agencia estudió que el terreno colinda con estos dos cuerpos de agua y que en él se localizan dos depresiones de flujo intermitente tributarias de la Quebrada Las Curías. Evaluó que el proyecto contempla mantener inalterada una franja de terreno con un ancho mínimo de 20 metros a lo largo del río y la quebrada para preservar en su totalidad las áreas de vegetación existente en los márgenes de los cuerpos de agua. Además, escudriñó que el proyecto proveería para la implantación de medidas para prevenir la erosión y sedimentación de éstos, la provisión de trampas de sedimento en los puntos de descarga de la escorrentía pluvial e instalación de mallas sintéticas.

A.R.Pe. examinó que el manejo de escorrentía pluvial mantiene inalterado los cauces de la Quebrada Las Curías y el Río Piedras y no será necesaria la canalización o dragado de éstos. Igualmente, contempló que el proyecto dispone para la recolección de las aguas de escorrentía mediante sistemas de captación para cada grupo de edificios y sus respectivas áreas de estacionamiento. Determinó que el proyecto cumple con los requisitos impuestos por la Junta de Planificación al aprobar la consulta de ubicación y con los endosos actualizados de distintas agencias incluyendo el D.R.N.A. Así, la entidad obligada a ejercer la vigilancia y conservación de las aguas[15]

---

[15] 3 L.P.R.A. sec. 155h.

avaló el 25 de enero de 2007 el proyecto luego de evaluar la Declaración de Impacto Ambiental Final sometida el 14 de febrero de 2007 por la J.C.A. que determinó que el proyecto cumple con la política pública ambiental. Al igual que A.R.Pe., el D.R.N.A. pesó el hecho de que la ubicación del área a desarrollarse se encuentra entre los cuerpos de agua mencionados y lo endosó. Al hacerlo, el D.R.N.A. requirió mantener una franja de 20 metros de área verde de conservación a las quebradas y del Río Piedras sin impactar éstas y disponiendo que no podrán ser utilizadas para usos distintos al propósito de conservación.[16] El ancho de la franja requerida satisface el Plan Especial Temático Núm. 8 para proteger el Río Piedras y sus cuencas ribereñas.

Luego de una minuciosa evaluación, A.R.Pe. aprobó el anteproyecto y el desarrollo preliminar. Para ello exigió a Empresas Loyola cumplir con los requisitos y medidas de mitigación establecidas por la J.C.A y aquellos de la Junta de Planificación. Igualmente, requirió obtener los endosos actualizados de todas las agencias antes de la certificación de los planos de construcción.

La agencia concluyó que el proyecto presentado cumple con las reglamentaciones aplicables. Es por ello que los recurridos únicamente cuestionaron ante el Tribunal de Apelaciones que el proyecto no podía ser aprobado debido a que se desarrollaría en el área adyacente al Corredor Ecológico de San Juan. Como explicamos, la intención legislativa no sostiene la interpretación señalada por los recurridos y avalada por el

---

[16]Véase, Apéndice del recurso, págs. 128-131.

Tribunal de Apelaciones. Independiente de tal realidad, lo expuesto refleja irrefutablemente que el proyecto fomenta y cumple la política pública de conservación de las áreas verdes boscosas y protección de los márgenes y cauces del Río Piedras y de la Quebrada Las Curías. Erró el foro apelativo intermedio al no estimar de igual forma.

De otra parte, advertimos que el Tribunal de Apelaciones –como fundamento adicional para revocar a A.R.Pe.- concluyó que el proyecto a desarrollarse excedía el área de ocupación para el distrito en el que ubica. Ello no fue uno de los errores señalados ante ese foro. En su alegato ante este Tribunal, los recurridos aluden escuetamente a la conclusión del foro apelativo. Por su parte, Empresas Loyola destaca que el proyecto cumple con todos los parámetros aplicables.

En cuanto al área de ocupación, nos limitamos a destacar que el proyecto ubica en un área calificada como suelo urbano (SU) en un Distrito Residencial Uno (R-1). De la resolución aprobando la consulta de ubicación surge que la Junta de Planificación examinó el proyecto como un desarrollo extenso y debido al diseño propuesto aplicó algunos de los parámetros de un Distrito Residencial Cuatro (R-4) conforme permite la reglamentación. A su vez, el terreno forma parte de los distritos sobrepuestos de redesarrollo (RD-3-área urbana periferal) del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III. Estos se utilizan con el propósito de viabilizar los objetivos de desarrollar el suelo urbano y la conservación de los suelos especialmente protegidos. Los distritos sobrepuestos solo afectan los parámetros de densidad (en función de la altura,

el área bruta de construcción y el área bruta de piso). Véase, Sección 10.00 del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III. Conforme a la clasificación y calificación del terreno resalta que éste se contempla para facilitar, según se justifique, las necesidades de crecimiento urbano en donde se permite la aprobación de desarrollos extensos. Véase, Sección 8.02 y Tabla I del Apéndice II del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III.

El terreno de Empresas Loyola está clasificado como un Distrito Residencial 1 (R-1). El área de ocupación en el distrito sobrepuesto aplicable al referido terreno es de un 55%. En estos distritos sobrepuestos se mantiene el 40% de la capa vegetal, por lo que no hay remoción de áreas de bosques y se mantienen los patrones de drenajes existentes con el mínimo de impacto posible en las obras de canalización y pluviales. Véase, Sección 10.08 del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III. Por tal razón, la resolución de la Junta de Planificación aprobando la consulta de ubicación determinó que la densidad propuesta alcanza los mínimos y no excede los máximos establecidos en el Plan de Usos de Terrenos para la Región Metropolitana de San Juan vigente ni en el Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III. Véanse, Sección 4.04(c)2 del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III; Resolución emitida por la Junta de Planificación de 14 de junio de 2007, Ap. págs. 355-356. Ello fue avalado por A.R.Pe. al disponer expresamente que "el proyecto cumple con los requisitos

establecidos por la Junta de Planificación en la Consulta de Ubicación aprobada". Véase, Resolución de A.R.Pe. de 13 de agosto de 2008, Ap. págs. 342-343.

De acuerdo con ello, el desarrollo cumple con el porciento de área de ocupación destinado para el distrito donde ubica. Ésta es una determinación altamente técnica que fue evaluada y endosada por los organismos especializados y merece la mayor deferencia por parte de este Tribunal. La evaluación realizada es una que está dentro de la pericia de los organismos administrativos –la Junta de Planificación y A.R.Pe.- al aplicar las regulaciones concernientes.

El Tribunal de Apelaciones limitó su análisis a considerar **solamente** que el área de ocupación para un distrito R-4 no puede exceder el 40%. Véase, Sección 8.02 (f)(3) del Reglamento de Ordenación Territorial del Municipio de San Juan, Tomo III. Amparado en que de la resolución emitida por A.R.Pe. surge que el 52.83% del solar se utilizaría para facilidades vecinales, calles y área residencial, el foro intermedio determinó que la ocupación del proyecto excede los límites establecidos y los requisitos de la Junta de Planificación. Al así actuar no tan solo se apartó de la norma general que propende que los foros apelativos no atiendan planteamientos que no fueron traídos ante ese foro, sino que resulta patente que erró en su determinación al obviar los otros requisitos expuestos por la Junta de Planificación y el reglamento aplicable. [17]

---

[17]Véase, <u>Murcelo v. H.I. Hettinger & Co.</u>, 92 D.P.R. 411, 426 (1965). Entendemos que la actuación del foro intermedio respondió a que concluyó erróneamente que no estaba impedido de reconocer en apelación otro fundamento de derecho válido y

En resumen, la Ley Núm. 206, según enmendada, *supra,* establece una política de conservación y protección de los terrenos identificados catastralmente. Ésta se extiende al *Arboretum* y a las franjas públicas que conforman la servidumbre legal desde los cuerpos de agua compuestos por el Río Piedras, las Quebradas Ausubo, Las Curías y los Guanos. Sin embargo, no impide el desarrollo absoluto de las áreas aledañas siempre y cuando se cumpla con los requisitos de los reglamentos aplicables. El terreno a desarrollarse por Empresas Loyola no forma parte del Corredor Ecológico de San Juan ni del *Arboretum.* Por tanto, no le aplica la prohibición absoluta de desarrollo contemplada por la Ley Núm. 206, según enmendada, *supra.* De igual forma, un estudio del proyecto evaluado refleja que éste cumple con los reglamentos aplicables conforme determinaron las agencias concernientes. No existe razón válida en derecho que impida la aprobación del desarrollo preliminar y anteproyecto presentado por Empresas Loyola. A.R.Pe. actuó correctamente al aprobarlo.

_____

adecuado para sostener lo que los recurridos le reclamaron. Véanse, E.L.A. v. Northwestern Selecta Inc., Op. 27 de marzo de 2012, 2012 T.S.P.R. __, 184 D.P.R. __ (2012); S.L.G. Flores-Jiménez v. Colberg, 173 D.P.R. 843, 850-851(2008); Hons. Castro, Cabán v. Depto. de Justicia, 153 D.P.R. 302, 312-313 (2001); Hernández v. Espinosa, 145 D.P.R. 248, 264-265 (1998) y casos allí citados; Piovanetti v. Vivaldi, 80 D.P.R. 108, 121-122 (1957); Sánchez v. Eastern Air Lines, Inc., 114 D.P.R. 691, 694-695 (1983); Santiago Cruz v. Hernández Aquino, 91 D.P.R. 709, 711-712 (1965). Así, el foro intermedio consideró que A.R.Pe. cometió un error al aprobar el proyecto por entender que excedía el área de ocupación para el distrito. Actuó incorrectamente.

IV

Por las razones esgrimidas, se revoca la sentencia emitida por el Tribunal de Apelaciones.


                                        LUIS F. ESTRELLA MARTÍNEZ
                                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Empresas Loyola I, S. en C., S.E.

    Peticionaria

        v.

                        CC-2009-0784      Certiorari

Comisión de Ciudadanos al
Rescate de Caimito; Montehiedra
Community Association, Inc.;
Comité de Vecinos de la Calle
Bienteveo de la Urb. Montehiedra

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 18 de octubre de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia emitida por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta disiente del resultado por considerar que contraviene la intención legislativa plasmada en la Ley Núm. 206-2003 que creó el Corredor Ecológico de San Juan. En esa ley se expuso claramente la intención de nuestra legislatura de proteger una de las escasas áreas de cubierta vegetal que quedan en el Municipio de San Juan, proveer una zona de amortiguamiento ante el desarrollo urbano desmedido en la capital, disminuir la magnitud de las inundaciones mediante la protección de las cuencas hidrográficas, conservar el ecosistema de numerosas especies de flora y fauna, y brindar oportunidades educativas y recreativas a todos los sanjuaneros. La decisión mayoritaria también violenta el fin legislativo expuesto en la Ley Núm. 260-2004 que incluyó el proyecto de siembra ciudadana Arboretum de Cupey en los terrenos

protegidos del Corredor Ecológico de San Juan. Esa ley contempla preservar "un gran pulmón verde" para la zona metropolitana, fomentar la colaboración comunitaria en la reforestación urbana, promover la siembra como medida contra la erosión del terreno, "detener la destrucción de estas áreas boscosas y proteger adecuadamente el único río existente y el único lago que tenemos en el Municipio de San Juan, el Río Piedras y el Lago Las Curías, al igual que sus quebradas tributarias" y frenar los "múltiples desarrollos propuestos que, de ser aprobados, impactarían adversamente la cubierta verde y las cuencas" de varias quebradas "cuyas aguas son tratadas para consumo humano" y amenazan al Arboretum de Cupey y al Corredor Ecológico de San Juan". La conclusión de la Opinión, además, atenta contra el propósito legislativo de "clarificar el lenguaje de la ley, manteniendo la principal finalidad de proteger las áreas naturales integradas en el espacio del Corredor Ecológico", que expresa la Ley Núm. 1 de 2007. Resulta inconcebible que, a pesar de que la Legislatura procuró la mayor protección posible –la prohibición de todo desarrollo- para esta área por la importancia ecológica que le reconoció, se aprobara el anteproyecto para Ciudad Jardín de Cupey, un proyecto extenso en un predio que colinda con los cuerpos de agua que las leyes decidieron resguardar y por el cual pasan dos tributarias de Las Curías. Más aun cuando la razón para no proteger esta finca es que no se adicionó mediante designación catastral, ya que el Arboretum se añadió al Corredor identificándolo por lindes y no por número de catastro. Tampoco se explica por qué todos los números de catastro del área comienzan por la cifra 087, mientras que el número de la finca en controversia comienza con un 114, ni por qué el Departamento de Recursos Naturales, en el 2008, no incluyó la parcela entre las de mayor prioridad de conservación como motivo para adquisición a pesar de su ubicación adyacente a cuerpos de agua y la presión de desarrollo por su cercanía a áreas comerciales. El Juez Presidente señor Hernández Denton no intervino. La Juez Asociada señora Rodríguez Rodríguez está inhibida. La Jueza Asociada señora Pabón Charneco no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo